**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **MARCELA GRACIANI,** | CASE NO. 3:24 CV 813 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **BOARD OF EDUCATION OF THE TOLEDO CITY SCHOOL DISTRICT, et al.,** | |
| Defendants. | **MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

Pending before the Court are cross-Motions for Summary Judgment filed by Defendants

Board of Education of Toledo City School District ("TPS") and Garrett Pelz on their respective

crossclaims, each seeking a declaratory judgment regarding TPS's duty to defend and indemnify

Pelz pursuant to Ohio Revised Code § 2744.07(D). (Docs. 50, 51). These Motions are now fully

decisional. *See* Docs. 52, 53, 54, 55, 57. For the reasons stated below, the Court denies TPS's

Motion and grants Pelz's Motion.

### BACKGROUND

At all relevant times, Pelz worked as a special education teacher for TPS at Spring

Elementary. This case arises from Pelz's handling of Plaintiff Marcela Graciani's child, J.M., in

one of TPS's special education classrooms at Spring Elementary. Plaintiff alleges Pelz picked J.M.

up and threw him across the room after J.M. engaged in repeated disruptive behavior. (Doc. 1, at

7).[1] J.M.'s face was "severely injured" as a result of the incident, including suffering a bloodied mouth. *Id.* at 7–8. Plaintiff brought numerous federal claims against both Defendants pursuant to the Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*), Title VI of the Civil Rights act of 1964 (42 U.S.C. § 2000d *et seq.*), and § 1983 for violations of J.M.'s rights under the Fourth and Fourteenth Amendments. (Doc. 1, at 8-14).

A political subdivision is excused from the duty provide its employee with a defense where the employee's challenged actions were "manifestly outside the scope of [their] employment or official responsibilities" or not taken "in good faith." Ohio Rev. Code § 2744.07(A)(2)(a)–(b). Similarly, the political subdivision need not "indemnify and hold harmless" an employee if the employee was "not acting within the scope of [their] employment" or "not acting in good faith." *Id.* at § 2744.07(B)(2)(a)–(b). TPS previously brought a motion for a "determination" pursuant to Ohio Revised Code § 2744.07(D) regarding its duty to defend and indemnify Pelz in this action. Subsection (D) provides "[i]f a political subdivision refuses to provide an employee with a defense in a civil action or proceeding as described in division (A) . . . upon the motion of the political subdivision, the court shall conduct a hearing regarding the political subdivision's duty to defend the employee." *Id.* at § 2744.07(D). This Court denied TPS's Motion for Determination because it failed to properly invoke this Court's limited subject matter jurisdiction. *See* Doc. 45.

With leave, TPS and Pelz subsequently amended their respective Answers to include crossclaims for declaratory judgments regarding TPS's duty to defend Pelz under § 2744.07. *See* Docs. 46, 47. The instant summary judgment Motions followed.

---

1. During his deposition in this case, Pelz described having "grabbed both of [J.M.'s] shoulders and shoved him sideways away from his desk. Which was more forceful than necessary and [J.M.] fell to the ground [/] rug and he then left the classroom and went to the office [/] nurse." (Doc. 35, at 64).

**STANDARD OF REVIEW**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any factual matter in dispute; the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

**DISCUSSION**

Despite not formally reaching the merits of the § 2744.07 inquiry in its prior Order, the Court expressed skepticism that TPS may avoid its duty to defend and indemnify Pelz in this action.

> After a "peek" into the merits of the § 2744.07 question, *cf. Perry v. Martinez*, 2011 WL 9304, at *2 (N.D. Ohio) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)), the Court is skeptical TPS may avoid its duty to defend and indemnify Pelz in this action. For, even if Pelz utilized more force than necessary to restrain J.M.

3

or incorrectly determined J.M. needed to be restrained in the first instance, the record at the current time is largely devoid of evidence establishing Pelz actions were "either self-serving or wholly detached from the business of" maintaining order in his special education classroom. *Gillispie*, 2025 WL 1276900, at *12. Specifically, it is not enough that Pelz's actions be wrong, harmful, or otherwise sufficiently tortious so as to create liability. *See Thomas v. Ohio Dep't of Rehab. & Corr.*, 548 N.E.2d 991, 994 (Ohio Ct. App. 1988). Rather, the act must be so egregious so as to have "no relationship to the conduct of [TPS's] business" or to "sever[] the relationship of employer-employee." *Id*. Nevertheless, as the merits of TPS's Motion are not before it at this juncture, the Court reserves judgment on this question until a party properly asserts a claim for relief under § 2744.07.

(Doc. 45, at 7 n.5). Nothing the Parties presented in their respective Motions has persuaded the Court otherwise. In short, TPS has not identified a dispute of material fact which, if resolved in their favor, would permit a reasonable jury to determine Pelz acted manifestly outside the scope of his employment or in bad faith.

Scope of Employment

Under § 2744.07, acting "manifestly" outside the scope of one's employment means "plainly and obviously" so acting. *Whaley v. Franklin Cnty. Bd. of Comm'rs*, 752 N.E.2d 267, 272 (Ohio 2001). An employee acts within the scope of their employment when they believe themselves to be acting, at least in part, in their employer's best interest or where their actions are logically related to the business of the employer. *See Gillispie v. Miami Twp.*, 2025 WL 1276900, at *12 (6th Cir.) (first quoting *McCormack v. Jefferson Area Loc. Sch. Dist.*, 112 N.E.3d 338, 344 (Ohio Ct. App. 2018); and then quoting *Theobald v. Univ. of Cincinnati*, 857 N.E.2d 573, 577, 580 (Ohio 2006)).

In its Motion, TPS relies primarily on a comparison between Pelz's conduct towards J.M. and TPS Board policy, which, consistent with Ohio law, permits physical restraint of a student where their behavior "presents an immediate threat of physical harm to the student or others and no other safe or effective method of intervention is available." (Doc. 50-2, at 2); *see also* Doc. 50,

4

at 5 (quoting Ohio Rev. Code § 3319.41). TPS argues Pelz's actions constituted a clear breach of this policy, as "there was no reason for Mr. Pelz to place his hands on J.M." and, when he did move to restrain J.M., "Mr. Pelz did not use a [crisis prevention intervention]-approved restraint." (Doc. 50, at 5–6. As a result, TPS argues "Mr. Pelz could not 'reasonably believe' he was acting in TPS' best interest when engaging in these actions." *Id.* at 6.

But the foundation for this argument belies any assertion Pelz plainly acted outside the scope of his employment. Primarily, this is because the TPS Board policy *expressly* contemplates the use of physical restraints on students who present certain dangers to themselves or others. Here, TPS does not cite evidence in the record disputing Pelz's testimony establishing J.M. began to kick his desk, "hit[] his head on the back wall" of the classroom, and attempted to stand on top of his classroom desk. (Doc. 35, at 53–54; Doc. 50, at 2–3). The use of physical restraint in such a scenario is, at a minimum, logically connected to the Pelz's duties to maintain order and safety in his classroom, as J.M.'s actions undoubtedly presented a non-insignificant danger to himself and potentially other classmates. That Pelz might have had alternatives to physical restraint at his disposal or later admitted to using "more force[] than necessary," *see* Doc. 50, at 5 (quoting Doc. 35, at 64), is largely immaterial to the Court's inquiry at this stage, as such considerations bear only on the reasonableness of Pelz's conduct and its compliance with TPS Board policy. *See Thomas v. Ohio Dep't of Rehab. & Corr.*, 548 N.E.2d 991, 994 (Ohio Ct. App. 1988) ("Although the use of force was determined unnecessary and, therefore, unjustified does not, in and of itself, demonstrate that [the defendant's] actions were manifestly outside the scope of his employment.").

Rather, the Court finds no difficulty in concluding the record is devoid of evidence sufficient for a reasonable jury to conclude Mr. Pelz's actions were "either self-serving or wholly detached from the business of" running his special education classroom. *Gillispie*, 2025 WL

5

1276900, at *12. That is, TPS puts forth no evidence suggesting Pelz's physical restraint of J.M. was so egregious that it "sever[ed] the relationship of employer-employee" or bore "no relationship to the conduct of [TPS's] business." *Thomas*, 548 N.E.2d at 994.[2] Thus, summary judgment in favor of Pelz on the issue of whether he acted plainly and obviously outside the scope of his employment is warranted.[3]

Good Faith

An employee acts in bad faith where their conduct "evinces a dishonest purpose, conscious wrongdoing, or the breach of a known duty through some ulterior motive." *McCormack*, 112 N.E.3d at 344; *Slater v. Motorists Mut. Ins.*, 187 N.E.2d 45, 46 (1962) (syllabus) ("[B]ad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.").

In supporting its own Motion and opposing Pelz's, TPS again relies on the alleged severity of Pelz's restraint of J.M. and his post-hoc admission regarding the excessive nature of the restraining force used. *See* Doc. 50, at 6–7; Doc. 52, at 3–4. In addition, TPS points to the

---

2. TPS's attempts to distinguish *Thomas* and related cases on the basis that they apply a different statute's "scope of employment" test, *see* Doc. 52, at 2; Doc. 55, at 2, are unpersuasive, as Ohio courts regularly adopt definitions and apply analyses across statutes when those statutes employ the same or similar language. *See, e.g., McCormack*, 112 N.E.3d at 344 (adopting for purposes of § 2744.07 the definition of "bad faith" from *Moore v. Cleveland*, 87 N.E.3d 858, 864 (Ohio Ct. App. 2017), which analyzed those terms as used in § 2744.03).

3. No Party expressly offered argument under § 2744.07(B)(2)(b)'s ostensibly more lenient standard for relieving a subdivision from its duty to indemnify its employees, which omits § 2744.07(A)(2)(b)'s requirement that the employee's act be "manifestly" outside the scope of their employment. *See* Ohio Rev. Code § 2744.07(B)(2)(b) ("A political subdivision is not required to indemnify and hold harmless an employee . . . [if] [a]t the time of the act or omission, the employee was not acting within the scope of the employee's employment or official responsibilities."). Nevertheless, because TPS cites no record evidence tending to suggest Pelz's conduct was self-serving, antithetical to his employment duties, or otherwise logically unconnected to his employment, the Court's conclusion remains the same under both standards.

arbitrator's conclusion that discrepancies between Pelz's written statement and subsequent testimony regarding this incident demonstrate an intent "to place blame for the student's injuries on the student himself." *See* Doc. 50, at 7 (quoting Doc. 50-1, at 19). On TPS's account, the arbitrator's conclusion "further demonstrates [Pelz's] actions towards J.M. were made in bad faith." *Id.*

TPS specifically invokes *Anderson v. Sutton*, in which the Sixth Circuit determined a corrections officer acted in bad faith in applying force to an inmate and was subsequently not entitled to a defense of her actions. 717 F. App'x 549, 552 (6th Cir. 2017); *see* Doc. 50, at 7. There, the court found the officer's decision to "gratuitously" use pepper spray on an inmate while the inmate lay "helpless and prostrate" such that they were clearly "not a threat" constituted bad faith conduct. *Anderson*, 717 F. App'x at 552. Here, as explained above, the uncontested evidence demonstrates J.M.'s actions *did* present some non-zero threat to both him and the orderly administration of Pelz's classroom. This is particularly true in light of TPS's admission that J.M. had a history of "hyperactivity, [and] verbal and physical aggression[.]" (Doc. 31, at 2). TPS cites no evidence in the record tending to suggest, even if Pelz did admittedly use more force than necessary to prevent J.M. from standing on the desk, that his restraint of J.M. approaches the "gratuitous punishment" described in *Anderson*. Nor does TPS identify any evidence tending to establish Pelz acted with an ulterior, improper motive beyond attempting to control his classroom and prevent dangers to his students. Additionally, the Court agrees with Plaintiff that TPS's invocation of the arbitrator's opinion of Pelz's inconsistent statements at most bears on Pelz's own credibility. *See* Doc. 53, at 8. It does not offer an independent basis on which a reasonable jury could conclude, when Pelz moved to restrain J.M., he acted in bad faith.

Finally, that Pelz recognized he used more force than necessary to restrain J.M. and violated TPS Board policy, without more, is an insufficient basis for a reasonable jury to conclude he engaged in "conscious wrongdoing." *See* Doc. 52, at 2–3. Contrary to TPS's assertion, not every employee who "recognizes the governing standard and knowingly departs from it" acts without good faith. *Id.* at 3. Rather, "[e]vidence of a violation of departmental policy does not create a genuine issue of material fact as to whether the violator acted . . . in bad faith . . . without evidence that the violator was aware that his conduct would in all probability result in injury." *Moore*, 87 N.E.3d at 868–69 (quoting *Argabrite v. Neer*, 75 N.E.3d 161, 168 (Ohio 2016)) (citation modified). Here, while Pelz's statements may give rise to a permissible inference he knew he violated applicable policies when restraining J.M., TPS identifies no evidence in the record suggesting Pelz knew his conduct was likely or certain to cause J.M. injury. In fact, Pelz's undisputed testimony indicates he restrained J.M. with the subjective intent to protect J.M. from injuring himself by climbing on to an unstable desk with "legs [that] can easily break." *See* Doc. 35, at 55–56.

Accordingly, because TPS fails to identify for the Court sufficient evidence on which a reasonable jury could determine Pelz acted in bad faith when restraining J.M., summary judgment in favor of Pelz is proper. TPS must therefore defend Pelz in this action and, should he be held personally liable for J.M.'s injuries, indemnify him pursuant to Ohio Rev. Code § 2744.07.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant Garrett Pelz's Motion for Summary Judgment (Doc. 51) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendant Board of Education of the Toledo City School District's Motion for Summary Judgement (Doc. 50), be and the same hereby is, DENIED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: August 4, 2026